IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF:<br><br>ONE BLACK COLORED ANDROID CELL PHONE WITH A BLACK PHONE CASE AND BLACK AND SILVER CRYSTALS AS THE LOCKSCREEN BACKGROUND SEIZED BY TFO SEABURN FROM A BLACK FORD MUSTANG SUV BEARING PA PLATE MCF 5019 AT 441 HAYS AVE PITTSBURGH PA 15210 ON SEPTEMBER 11, 2026. | Magistrate No. 26-1864 |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT OF ONE CELLULAR TELEPHONE**

I, Joseph Seaburn, Task Force Officer of the Drug Enforcement Administration (DEA), being duly sworn, depose and state that:

**AGENT BACKGROUND**

I, Joseph Seaburn, Task Force Officer of the Drug Enforcement Administration (DEA), being duly sworn, depose and state that:

1. I am an investigative or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I have been employed by the DEA as a Task Force Officer since January 2026, and I am currently assigned to the DEA Pittsburgh District Office, Pittsburgh, PA.

3. As a Task Force Officer with the DEA, I have experience and am responsible for investigating violations of federal laws, specifically Title 21 of the United States Code offenses.

Based on my training and experience, I know that it is a violation of Title 21 of the United States Code, Sections 841(a)(1) and 841 (b)(1)(B)(ii) to manufacture, distribute or dispense, or possess with intent to distribute a controlled substance.

4. Your Affiant, Narcotics Agent Joseph Seaburn, being duly sworn according to law, avers that the following is true and correct to the best of his knowledge, information and belief and is based on personal knowledge or information provided by reliable sources:

5. Your Affiant, Joseph E. Seaburn, is a Narcotics Agent II employed by the Pennsylvania Office of Attorney General, Bureau of Narcotics Investigation and Drug Control.

6. Your Affiant has been a sworn law enforcement officer since December of 2016. From December 2016 to December 2017, Your Affiant was employed by the New Castle Police Department as well as the Mercer Borough Police Department. From December 2017 to May 2021 your affiant was employed by the Pittsburgh Bureau of Police. Since May of 2021, your Affiant has been employed with the Pennsylvania Office of Attorney General in the Bureau of Narcotics Investigation and Drug Control. Your Affiant is currently assigned to the North Huntingdon Office, Narcotics Division. As a Narcotics Agent of the Pennsylvania Office of the Attorney General, Bureau of Narcotics Investigation and Drug Control, your Affiant is empowered by law to conduct investigations of, and to make arrests for offenses involving violations of the Controlled Substance, Drug, Device and Cosmetic Act and related offense under the Pennsylvania Crimes Code.

7. Your Affiant, while employed as a Narcotics Agent II, Pittsburgh Police Officer, New Castle Police Officer and Mercer Borough Police Officer, has been involved in numerous investigations concerning narcotics violations and of the Controlled Substance, Drug, Device and Cosmetic Act. While employed at the city of Pittsburgh Police, your Affiant worked as a Patrol Officer as well as a Plain Clothes Detective. During your Affiants career as a Pittsburgh Police

Officer, your Affiant had been involved in hundreds of arrests and convictions. Specifically, your Affiant has made numerous arrests for violations of the Drug Device and Cosmetic Act, resulting in numerous convictions for these offenses.

8. Your Affiant has applied for, obtained, and executed search warrants, as well as made seizures of narcotics, firearms and other materials involved in the packaging and distribution of narcotics. Your Affiant has been involved in numerous undercover purchases of controlled substances. Your Affiant has extensively interviewed dozens of individuals involved in selling or using of illegal narcotics. These individuals have provided your Affiant with detailed information concerning the terminology of the sale of narcotics, and how illegal narcotics are sold, manufactured, cultivated, and used. Your Affiant has attended numerous trainings and academies as a Police Officer and Narcotics Agent.

9. As a result of his training and experience, your Affiant has extensive knowledge regarding illegal drugs and the business of illegal drug sales, as well as the methods utilized by drug traffickers in the sale and distribution of controlled substances. This includes but not limited to, the tactics and methods of communication, including the fact that drug users and traffickers often speak in "code" when discussing drug and drug transactions, and other methods employed by illegal drug traffickers in furtherance of their criminal conduct and in an effort to avoid law enforcement detection.

10. Affiant Seaburn is empowered by law to conduct investigations of and to make arrests for offenses involving violations of the Controlled Substance, Drug, Device and Cosmetic Act of April 14, 1972, P.L. 233, No. 64, Section 1, et seq., and related offenses under the Pennsylvania Crimes Code.

## PROPERTY TO BE SEARCHED

11. This affidavit is submitted in support of a warrant authorizing the search of the contents within one cellular telephone seized by the Drug Enforcement Administration (DEA), Pittsburgh District Office (PDO) as the result of a search warrant on September 11, 2026. The list below describes the device.

a. One black-colored Android cellular telephone with a black phone case and black and silver crystals as the lockscreen background seized by TFO Seaburn from a black Ford Mustang SUV bearing PA Plate MCF 5019 at 441 Hays Ave Pittsburgh PA 15210 on September 11, 2026.

## BACKGROUND OF INVESTIGATION

12. DEA Pittsburgh High Intensity Drug Trafficking Area (HIDTA) Group 63 is investigating the drug trafficking activities of Devon DUELL and his associates.

13. On the date of September 11, 2026, the DEA Group 63 TFO Seaburn in conjunction with the Pennsylvania Office of the Attorney General, and DANET Ross Twp Task Force Officers executed a signed search warrant on a black Mustang SUV bearing PA registration MCF5019. As a result of this Search Warrant approximately Six Thousand twenty-one (6,021) fentanyl pills were seized as well as a large quantity of raw fentanyl and cocaine.

## PROBABLE CAUSE

14. On September 11, 2026, at 0730 hours Agents from the Pennsylvania Attorney General Office in conjunction with DANET Ross Twp Detectives, and Mt. Oliver Police arrived on scene at 441 Hays Ave Pittsburgh PA 15210 in Mount Oliver Borough to execute a search warrant.

15. Upon arriving on scene Agents and Detectives observed a black Mustang SUV bearing PA MCF5019 parking near the stated address.

16. Agents and Detectives viewed a male later identified as Devon DUELL exiting the Mustang, crouch down beside the driver door as to place an object on the ground, and walk away from the scene. There was also an unknown female on the passenger side of the vehicle at this time near the front door.

17. The warrant service was executed, and the address of 441 Hays Street was processed.

18. During processing of the scene and general area, Agents and Detectives located a small bag of cocaine near the rear passenger side of the Mustang in the direction the male and female were observed walking away.

19. Agents and Detectives then looked under the Mustang and observed a firearm underneath the driver side rear tire where DUELL was seen crouching down upon Agents' arrival.

20. The firearm was a **GLOCK 26 9mm handgun.**

21. The firearm and cocaine were recovered. Observed inside the vehicle in plain view was a digital scale in the center console.

22. K9 Arrow was deployed for an open-air sniff and positively alerted on the vehicle for the presence of narcotics.

23. A warrant for the mustang SUV was applied for and granted by Honorable Judge Stephens on September 11, 2026.

24. Search of the vehicle yielded the following:

- 6,021 fentanyl pills (approximate street value $48,168)
- 118 grams of suspected raw fentanyl (approximate street value $11,800)
- 2.2 grams of raw heroin (approximate street value $220)
- 153 grams of cocaine (approximate street value $15,300)

- 5 grams of crack cocaine (approximate street value $500)
- 210 grams of marijuana (approximate street value $750)
- 23 suboxone strips (approximate street value $230)
- 21 OxyContin pills (approximate street value $420)
- 8 grams of crystal meth (approximate street value $50)
- Digital Scale
- Indicia for Devon DUELL
- Black android cell phone

25. All narcotic evidence located within the stated vehicle were located within a blue in color backpack and a black in color cross body bag labeled "Fashion." These bags were located on the back seat of the driver's side of the vehicle.

26. The black colored Android Cell Phone with a black phone case and black and silver crystals as the lockscreen background was on the front driver's side of the stated vehicle.

27. Based on the location of the phone within the vehicle, the presence of indicia belonging to Devon DUELL in the vehicle, and DUELL'S operation/use of the vehicle immediately before execution of the warrant, affiants believe the phone was possessed and used by DUELL.

**ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the internet are typically stored for a period on the device. This information can sometimes be recovered with forensic tools.

29. As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how each device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the devices because:

a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

f. *Nature of examination*. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to

employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the devices to human inspection in order to determine whether it is evidence described by the warrant.

*Manner of execution*. Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

**BACKGROUND REGARDING DRUG-TRAFFICKING AND ELECTRONIC DEVICES**

30. I am aware, through both training as well as experience gained through multiple narcotics investigations, the targets of those narcotics investigations utilize cellular telephones and electronic devices to not only arrange meetings with their drug customers but also speak with fellow co-conspirators as well as their drug sources of supply.

31. I am also aware that these targets also utilize multiple cellular telephones and electronic devices at one time in an effort to not only thwart detection by law enforcement but also to compartmentalize their drug trafficking customers to one phone and/or electronic device, their co-conspirators to another phone and/or electronic device, and their drug source of supply to yet another phone and/or electronic device.

32. Based upon my training and experience, I am aware that it is generally a common practice for drug traffickers to store the names and phone numbers of drug customers and photographs and video detailing illegal activities in cellular telephones and electronic devices. Because drug traffickers in many instances will "front" (that is, sell on consignment) controlled substances to their clients, and/or will be "fronted" controlled substances from their suppliers, such

record-keeping is necessary to keep track of amounts paid and owed, and such records will also be maintained close at hand so as to readily ascertain current balances. Often drug traffickers keep "pay and owe" records to show balances due for drugs sold in the past ("pay") and for payments expected ("owe") as to the trafficker's supplier(s) and the trafficker's dealer(s). Additionally, drug traffickers must maintain telephone and address listings of clients and suppliers and keep them immediately available in order to efficiently conduct their drug trafficking business.

33. Persons involved in significant drug trafficking typically conceal proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, secreting, or spending large sums of money derived from narcotic trafficking activities. This type of evidence can be stored in applications that are commonly found on "SMART" cellular telephones and/or electronic devices, such as the cellular telephones that are referenced throughout this affidavit.

34. Members of Drug Trafficking Organizations (DTO) often take group photographs with other enterprise members posing with paraphernalia, money and/or drugs. Many cellular telephones have a camera feature that is readily capable of capturing and storing these group photos.

35. Members of DTOs often store each other's phone numbers and contact information in the directories of their cellular phones and/or electronic devices.

36. Based on my experience and familiarity with cellular telephones, I am aware that the telephones have voicemail and telephone directory features, as well as camera features which allow the user to take photographs and store them in the cellular phone's memory card. Based on my experience and training, statements by other law enforcement officers, and personal observations, I know that because of the storage capacity of cellular telephones, the portability of cellular telephones, the ease with which information stored on a cellular telephone may be accessed

and/or organized, and the need for frequent communication in arranging narcotics transactions, cellular telephones are frequently used by individuals involved in drug trafficking. In particular, I and other law enforcement officers have found that information frequently maintained on cellular telephones includes the contact numbers of other co-conspirators, contact numbers for narcotics customers and stored photographs of DTO activities. This evidence will come in the form of caller identification information, call log information, telephone numbers, address information, or other identification information, as well as opened and unopened voicemail and/or text messages, photographs, videos and information about access to the Internet.

37. Members of DTOs routinely use multiple cellular telephones in succession as one breaks or the DTO feels that the number associated with the phone is compromised to Law Enforcement. The physical phone may no longer be an active communicative device, however many times, these old phones are not discarded as they possess value to the DTO. The replaced device contains within it the contact information for drug customers of the DTO, and many times these phones are maintained as digital phone books should the new active phone become unusable or unavailable. Furthermore, these replaced phones are commonly kept in a relatively accessible location where either all or select members of the DTO can access the information within should it become necessary. As stated above, members of DTOs routinely take photographs and or memorialize other information of evidentiary value within these replaced phones. As such, it is common to recover multiple inactive phones, especially at locations central to or important to the DTO.

38. Based upon my training and experience, it is generally common practice for drug traffickers to have in their possession, on their person, in their vehicles or at their residences and/or their business, firearms, including but not limited to handguns, pistols, revolvers, rifles, shotguns,

machine guns and other weapons. I also am aware that, typically, drug traffickers possess these firearms and other dangerous weapons to protect their profits, supply of drugs, and themselves from others who might attempt to forcibly take the traffickers' profits and/or supply of drugs.

Based upon my training and experience, as well as the knowledge and experience of other agents / officers in my office, I am also aware fleeing from police while in possession of firearms and large amounts of illegal narcotics are indicators of criminal activity, more specifically drug trafficking and/or the possession of illegal firearms.

## CONCLUSION

39. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Target Devices, detailed in Attachment A, to seek the items described in Attachment B.

Respectfully submitted,

*/s/ Joseph Seaburn*
Joseph Seaburn
Task Force Officer
Drug Enforcement Administration

Sworn and subscribed before me,
by telephone pursuant to Fed. R. Crim. P. 4.1(b)(2)(A),
this 13th day of November 2026.

This matter shall remained under seal
until further order of the Court.

______________________________________

HONORABLE PATRICIA L. DODGE
Chief United States Magistrate Judge
Western District of Pennsylvania

## ATTACHMENT A

## LOCATION TO BE SEARCHED

1. The devices to be searched are as follows:

   a. One black colored Android Cell Phone seized by TFO Seaburn from a black Ford Mustang SUV bearing PA Plate MCF 5019 at 441 Hays Ave Pittsburgh PA 15210 on September 11, 2026.

## ATTACHMENT B

## ITEMS TO BE SEARCHED

1. All records, information, and items evidencing drug possession or trafficking, including evidence of who used the device and/or when and/or from where, or a violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Sections 924(c) and 922(g) including:

a. incoming and outgoing call and text message logs;
b. contact lists;
c. photo and video galleries;
d. sent and received text messages;
e. online searches and sites viewed via the internet;
f. online or electronic communications sent and received, including email, chat, instant messages and social media accounts;
g. sent and received audio files;
h. navigation, mapping, and GPS files;
i. telephone settings, including speed dial numbers and the telephone number for the subject telephone and related identifying information such as the ESN for the telephone;
j. call forwarding information;
k. messages drafted but not sent;
l. voice messages;
m. all user log in information; and
n. travel logs.

2. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form. However, no real-time communications will be intercepted and searched during service.